IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| BRIAN FRANCIS A'HEARN, ) | |
| KATHLEEN ANN A'HEARN, ) | Bankruptcy No. 11-00615 |
| ) | |
| Debtors. ) | |

### ORDER RE: TRUSTEE'S MOTION FOR DISGORGEMENT
### OF FEES AND FOR TURNOVER

This matter came before the undersigned for hearing on March 1, 2012. Trustee Renee Hanrahan appeared with attorney Steven Klesner. Attorney Janet Reasoner appeared for the U.S. Trustee. Attorney Thomas Fiegen represented Debtors Brian and Kathleen A'Hearn, and Fiegen Law Firm. After the presentation of evidence and argument, the Court took the matter under advisement. The time for filing briefs has now passed. The parties have raised issues in their briefs which will be addressed by separate hearing and order. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (E).

### STATEMENT OF THE CASE

Trustee seeks the return of fees paid to Fiegen Law Firm ("Fiegen") from non-exempt property of the estate. Fiegen asserts only a portion of the fees paid are traceable to property of the estate.

### FINDINGS OF FACT

Trustee concluded, based on an accounting Debtors filed on January 20, 2012, that Debtors paid fees to Fiegen from property of the bankruptcy estate. These consist of funds Debtors received pursuant to a Separation Agreement with The Waldinger Corporation ("the Waldinger funds"). This Court ruled the Waldinger funds are not exempt in an Order entered October 4, 2011. On March 12, 2012, the U.S. District Court affirmed that Order on appeal.

Debtors attached an accounting to their Response (Doc. 87) to Trustee's Motion for Turnover (Doc. 85). See Trustee's Ex. 5. They disclose in the accounting that they received $54,805.60 in Waldinger funds postpetition. Trustee's Motion for Disgorgement requests that the Court order Fiegen to disgorge amounts received from the bankruptcy estate's property. The U.S. Trustee filed a comment in support of Trustee's Motion for Disgorgement, asserting Fiegen may not be compensated from the bankruptcy estate without court approval.

Fiegen Law Firm acknowledges that it may not be paid attorney fees from property of the estate. It asserts, however, that a smaller amount of the fees paid are attributable to property of Debtors' bankruptcy estate. Fiegen employed an accounting firm to review Debtors' postpetition checking account statements. It includes a tracing analysis as Exhibit "A" in the response filed January 20, 2012 (Doc. 100). See also, Trustee's Ex. 2. Postpetition, Debtors issued checks to Fiegen Law Firm totaling $18,043.22, not $27,433.03 as initially reported in Debtors' accounting. Fiegen's analysis, included as Trustee's Exhibit 2, calculates $5,150.94 of the total fees paid is attributable to the funds Debtors received from Waldinger under the Separation Agreement. Fiegen has offered to apply to a bank to rewrite a loan to borrow that amount for turnover to Trustee.

2

At the hearing, Steven Hellman testified about the tracing analysis he prepared for Fiegen. Trustee's Ex. 2. In making his analysis, he assumed, at Fiegen's request, that Debtors used non-Waldinger funds first in making payments to Fiegen. Mr. Hellman stated that of the total deposits during the time period analyzed, 38.75% were from Waldinger funds and 61.25% were from other income of Debtors.

Mr. Hellman also testified he identified an additional $475.06 in a July 18 transfer and $2,011.00 in an August 18 transfer which came from Waldinger funds. These raise the total paid to Fiegen from the Waldinger funds from $5,150.94, as shown on Exhibit 2, to $7,637.00. Mr. Hellman stated that a pro rata analysis could be used since cash is fungible and it is difficult to say which dollar paid which bill. Using a pro rata analysis, 38.75% of the total amount Debtors paid Fiegen would be assumed to be paid from Waldinger funds. Of the total Fiegen received from Debtors of $18,043.22, the pro rata amount is $6,991.75.

Trustee Renee Hanrahan testified that she can trace all of Debtors' payments to Fiegen to the Waldinger funds in Debtors' accounts. She agrees that the total fees Fiegen received postpetition are $18,043.22, plus $500 in Fiegen's trust account which Mr. Fiegen received from Debtors at the January 2012 hearing. Trustee reviewed Debtors' checking and savings account statements and found a pattern of transfers between the two accounts. When Debtors received the Waldinger payments in their checking account, they transferred either the same amount or a smaller amount to the savings account. Then, a few days before writing a check to Fiegen Law Firm, Debtors would transfer the exact amount of the check from savings to checking. Thus, Trustee testified, Debtors used Waldinger funds in their

3

savings account to make all the payments to Fiegen Law Firm from their checking account.

The Court finds that Debtors received the Waldinger funds by direct deposit to their checking account near the end of each month starting in March. They received $7,692.80 per month for six months through August, then $2,161.95 per month starting in September. During that time period, Debtors transferred the following amounts from checking to savings:

| Date | Amount |
| --- | --- |
| 4/29/11 | $7,692.80 |
| 5/31/11 | $6,500.00 |
| 6/24/11 | $7,692.50 |
| 8/29/11 | $6,000.00 |

Obviously, two of these transfers are the exact amount of the Waldinger payments. All of these transfers occurred soon after Debtors received the Waldinger payments at the end of each month.

The savings account had a balance of $210.85 on April 20, 2011. Beginning with the April 19, 2011 statements through January 20, 2012, Debtors had ending monthly balances in the checking and savings accounts totaling between $6,908.88 and $21,231.16. Debtors transferred the entire final balance in the savings account, $12,244.91, to the checking account on January 31, 2012 after the hearing on Trustee's Motion for turnover of the Waldinger funds. Trustee testified she received a check from Debtors in that amount pursuant to her Motion for Turnover (Doc. 85).

The Court further finds that during May through September 2011, Debtors wrote checks to Fiegen Law firm immediately after transferring the exact amount of

4

the check from their savings account to their checking account. The dates of the transfers and the checks to Fiegen, and the amounts, are as follows:

| Transfer Date | Check Date | Amount |
| --- | --- | --- |
| 5/06/11 | 5/12/11 | $4,129.78 |
| 6/06/11 | 6/10/11 | $1,792.63 |
| 7/18/11 | 7/18/11 | $2,431.43 |
| 8/08/11 | 8/08/11 | $3,348.31 |
| 9/06/11 | 9/06/11 | $2,842.51 |

Also, Debtors transferred the exact amount of a Waldinger payment, $2,161.95, from savings to checking days before writing a check to Fiegen for $612.92 in October. The total of these six payments from Debtors to Fiegen is $15,167.58. The two remaining checks to Fiegen, $904.20 dated 11/4/11 and $1,971.44 dated 12/16/11, do not match up as well to transfers of Waldinger funds between the checking and savings accounts as the first six payments do.

## AUTHORITY OF ATTORNEY FOR TRUSTEE

At the January 31, 2012 hearing on the Motion for Turnover (Doc. 85), Mr. Fiegen stated that he did not consider communications from the attorney for Trustee, Steve Klesner, to have the same force as communications directly from Trustee Renee Hanrahan. He stated: "I don't view a letter from Mr. Klesner as a letter from the trustee, Your Honor, and I don't view a letter from Mr. Klesner as force of law. I simply advised my client of the trustee's position that the trustee wanted them to hold the funds. I advised them of that. I don't view myself as a guarantor of my client's conduct." Transcript (Doc. 97), p. 5, lines 10-16.

The following was also stated on the record at the January 31, 2012 hearing:

5

>THE COURT: Just so I'm straight on this because I want to be absolutely sure what your position is, but you're taking the position here that the trustee has no authority of any kind to your client. Is that it?
>
>FIEGEN: It is not, Your Honor. My position is the trustee has authority. Mr. Klesner is not the trustee. I have received letters from trustees in the past. Letters from the trustee do have the force of law. Letters from private attorneys in my position do not have the same force as a letter from the trustee.
>
>THE COURT: Is he a private attorney, or is he the attorney for the trustee?
>
>FIEGEN: In this case, Your Honor, he is the attorney for the trustee.

Id. at p. 7, lines 6-19.

"The relationship between client and attorney . . . is a quintessential principal-agent relationship." Commissioner of Internal Revenue v. Banks, 543 U.S. 426, 436 (2005) (citing Restatement (Second) of Agency § 1 cmt e (1957)). "A notification given by an agent is effective as notification given by the principal if the agent has actual or apparent authority to give the notification, unless the person who receives the notification knows or has reason to know that the agent is acting adversely to the principal." Restatement (Third) of Agency § 5.02 (2006). Thus, under the Restatement and Banks, a notification given by an attorney (the agent) is effective as notification given by the client (the principal).

The Iowa Supreme Court has stated that there is a presumption that where an attorney represents a client, the attorney does so as the agent of the client. Woodruff & Son v. Rhoton, 101 N.W.2d 720, 723 (Iowa 1960). Notice given by an attorney is the act of the client as there is a unity of principal and agent, or client and

6

attorney. Id. There is also a presumption that the client authorized the attorney to appear on the client's behalf. Bleakley v. Long, 268 N.W. 152, 154 (Iowa 1936). This presumption prevails unless rebutted by a showing of reasonable grounds supported by evidence. Id.

Mr. Fiegen has not provided the Court with any authority supporting his position that communications from Attorney Klesner, acting as attorney for Trustee, have less weight than communications directly from Trustee. He has not rebutted the presumption that Trustee authorized Mr. Klesner to act as her attorney. Based on the foregoing law, Mr. Klesner's communications with Mr. Fiegen on Trustee's behalf have the same authority as do direct communications from Trustee. Mr. Fiegen's assertions to the contrary are not a correct statement of the law.

## DISGORGEMENT OF PROPERTY OF ESTATE

Upon the filing of a bankruptcy petition, an estate is created comprised of all interests of the debtor in property. In re Benn, 491 F.3d 811, 813 (8th Cir. 2007). Estate property includes potentially exempt property. In re Lumbar, 457 B.R. 748, 754 (B.A.P. 8th Cir. 2011). Potentially exempt property remains estate property until it is claimed exempt and 1) the objection period passes, or 2) after a party objects, the court makes a determination that the property is exempt. Id.; In re O'Brien, 443 B.R. 117, 133 (Bankr. W.D. Mich. 2011); In re Price, 2006 WL 6589883, *1 (Bankr. N.D. Ga. Sep. 25, 2006) (citing Owen v. Owen, 500 U.S. 305, 308 (1991)). Once the property is removed from the estate through exemption, the debtors may use it as their own. In re Gamble, 168 F.3d 442, 444 (11th Cir. 1999).

The law is settled that a Chapter 7 Debtors' attorney may not be paid from property of the bankruptcy estate. In re On-Line Services, Ltd., 324 B.R. 342, 348

(B.A.P. 8th Cir. 2005).   The Bankruptcy Code does not authorize payment of a debtor's attorney fees from estate funds unless the attorney has been employed by the trustee with court approval.   Id. at 347; Lamie v. United States Trustee, 540 U.S. 526, 538 (2004).   The court in On-Line Services concluded:   "The bankruptcy court correctly held that Fiegen could not be compensated out of estate funds for postpetition services."   324 B.R. at 348 (affirming this Court's order regarding fees received by Fiegen Law Firm); see also In re Samford, 125 B.R. 230, 233 (E.D. Mo. 1991) (approving disgorgement of attorney fees paid with funds which were property of the estate in Chapter 12 case).

In In re English Sheppard Realty Corp., 2010 WL 1492272, *6 (Bankr. E.D.N.Y. Apr. 13, 2010), in ordering disgorgement of legal fees paid with estate property, the court stated: "[s]uch use of the Debtors' funds was unauthorized, inappropriate, and subject to disgorgement."   The court in In re Bennett, 133 B.R. 374, 381 (Bankr. N.D. Tex. 1991), noted that the trustee was entitled to recover from either debtor or their attorney the fee payment which was property of the bankruptcy estate.

Fiegen Law Firm acknowledges that it should reimburse Trustee for payments received from Debtors from property of the bankruptcy estate.   It argues, however, that the total amount it should disgorge is either $7,637.00 traced by Mr. Hellman using the intermediate balance rule, or $6,991.75 using a pro rata analysis.   In response, Trustee argues that the entire amount of payments Fiegen received between April 19, 2011 and January 20, 2012, or $18,043.22, are traceable to the Waldinger funds which are property of the bankruptcy estate.

Tracing is a tool used to calculate damages from conversion. General Elec. Capital Corp. v. Union Planters Bank, N.A., 409 F.3d 1049, 1059 (8th Cir. 2005). The lowest intermediate balance rule used in tracing assumes the traced funds are the last funds withdrawn from a contested account. Id. Once funds are withdrawn from the account, however, "they are treated as lost, even though subsequent deposits are made into the account." Meyer v. Northwest Bank Iowa, N.A., 112 F.3d 946, 951 (8th Cir. 1997). The Iowa Supreme Court used the "lowest intermediate balance rule" to compensate a secured creditor from proceeds of its collateral in Ellefson v. Centech Corp., 606 N.W.2d 324, 336 (Iowa 2000). This Court also applied the rule in In re Kearney Partnership, No. 99-03131, slip op. at 2 (Bankr. N.D. Iowa Dec. 20, 1999), in ordering disgorgement of a retainer for legal fees which was paid from proceeds of a secured creditor's collateral.

In United States v. McConnell, 258 B.R. 869, 876 (N.D. Tex. 2001), the court held that all of the accounts into which recoverable funds might have flowed should be considered when applying a lowest intermediate balance analysis. The court determined the lowest intermediate balance of the combined accounts never dipped below the amount of the recoverable funds. Id.; see also General Elec. Capital, 409 F.3d at 1060 (finding the account balance prior to sweeps to another account is the relevant balance). One court has stated that courts have discretion to use a pro rata analysis when determining how to allocate commingled funds. In re 1031 Tax Group, LLC, 439 B.R. 78, 81 (Bankr. S.D.N.Y. 2010) (considering fraudulently transferred funds under § 550). The 8th Circuit Court of Appeals in General Elec. Capital, however, rejected a pro-rata tracing methodology. 409 F.3d at 1059 (noting there were no Missouri cases cited utilizing pro-rata tracing).

Tracing through the use of the intermediate balance rule or the pro rata analysis is appropriate when a party has rights in funds held in a bank account. It is used to compensate a party for conversion of its property. For example, a secured creditor would have rights to funds which are proceeds of the sale of its collateral. In the circumstances of this case, however, Fiegen does not have any rights to the funds in Debtors' checking and savings accounts which consist of property of the bankruptcy estate and Debtors' postpetition earnings. Rather, Trustee has the right to require turnover of the funds to the extent they are non-exempt property of the bankruptcy estate. In addition, as Fiegen concedes, Trustee is entitled to disgorgement of fees paid to Fiegen from that property of the estate.

The Court has traced Waldinger funds from (1) deposits into Debtors' checking account to (2) transfers to their savings account to (3) transfers back to their checking account and to (4) checks to Fiegen Law Firm in the total amount of $15,167.58. This is the total of the six checks Debtors gave to Fiegen between May 12, 2011 and October 6, 2011. The remaining two checks to Fiegen are not as easily traced to the Waldinger Funds. Fiegen also holds $500 from a recent payment to Debtors in its trust account which should be turned over to Trustee, for a total amount due to Trustee of $15,667.58.

It is evident to the Court from the timing of the payments to Fiegen that they came from the Waldinger funds. This is also supported by Debtors' accounting attached to their response to Trustee's initial Motion for turnover and their turnover of the entire savings account balance to Trustee after the January turnover hearing. Obviously, Debtors believed they were using Waldinger funds to pay Fiegen as well as to make the other payments disclosed in their accounting.

10

**WHEREFORE**, Trustee's Motion for Disgorgement of Fees and For Turnover is GRANTED.

**FURTHER**, the Fiegen Law Firm is directed to disgorge fees paid from property of the bankruptcy estate and turnover to Trustee the amount of $15,667.58.

**FURTHER** , judgment shall enter accordingly.

Dated and Entered: April 19, 2012

_____
PAUL J. KILBURG
U.S. BANKRUPTCY JUDGE